<u>**NOT FOR PUBLICATION**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| FRANK NUCERA, JR.,<br><br>Plaintiff,<br><br>v.<br><br>TOWNSHIP OF BORDENTOWN, *et al.*,<br><br>Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 24-8638 (KMW-EAP)<br><br>**OPINION** |

APPEARANCES:

RICHARD M. WIENER, ESQ.
ONE GREENTREE CENTRE, SUITE 201
1000 LINCOLN DRIVE EAST
MARLTON, NJ 08053

      *Counsel for Plaintiff Frank Nucera, Jr.*

ARMANDO V. RICCIO, ESQ.
ARMANDO V. RICCIO LLC
7A NORTH MAIN STREET
MEDFORD, NJ 08054

      *Counsel for Defendant Township of Bordentown*

MICHAEL PETER RUBAS, ESQ.
RUBAS LAW OFFICE
26 JOURNAL SQUARE, SUITE 300
JERSEY CITY, NJ 07306

      *Counsel for Defendant Salvatore Guido*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff Frank Nucera, Jr., ("Plaintiff"), brings this action against Defendant Township of

Bordentown, ("Defendant Township"), and Defendant Salvatore Guido, ("Defendant Guido"),

alleging that Defendants violated 42 U.S.C. § 1983 by engaging in malicious prosecution.

On August 21, 2024, Defendants removed this matter to federal court, (ECF No. 1). On September 9, 2024, Defendant Township filed a Motion to Dismiss, (ECF No. 10). On September 11, 2024, Defendant Guido filed his Motion to Dismiss, (ECF No. 12). Plaintiff opposed both motions in a single omnibus opposition, (ECF No. 14). Defendant Township, (ECF No. 17), and Defendant Guido, (ECF No. 21), replied. The Court held oral argument on April 29, 2025, and heard further from all parties. For the reasons that follow, Defendant Township's Motion to Dismiss, (ECF No. 10), and Defendant Guido's Motion to Dismiss, (ECF No. 12), are **GRANTED WITH PREJUDICE**.

## II.    BACKGROUND

Plaintiff was formerly the police chief of the Bordentown Township Police Department, from 2007 to October 2017, and worked with Defendant Guido, who was a police officer at the same department. *See* Compl. at ¶¶ 4-5. On October 31, 2017, he was indicted on three federal charges stemming from an arrest made on September 1, 2016, where Plaintiff allegedly intentionally assaulted an African American individual. *Id.* at ¶ 6. Plaintiff was charged with a hate crime violating 18 U.S.C. § 249(a)(1), unreasonable use of force in violation of 18 U.S.C. § 242, and false statements made by Plaintiff in an interview with F.B.I. agents regarding the arrest, in violation of 18 U.S.C. § 1001(a)(2). *Id.* at ¶ 7. In Plaintiff's first trial he was found guilty of making false statements and the court granted a mistrial on the other two charges. *Id.* at ¶¶ 11-13. On November 8, 2021, Plaintiff was brought to trial for a second time, and again a mistrial was granted on both counts. *Id.* at ¶¶ 14-15. On December 20, 2021, the prosecution decided to dismiss the indictment. *Id.* at ¶ 16. Defendant Guido testified in both proceedings. *Id.* at ¶¶ 17-18.

Plaintiff asserts that Defendant Guido lied to investigators, which provided the probable cause for the hate crime and excessive force claims against Plaintiff, and that he continued to lie when testifying at trial. *Id.* at ¶¶ 19-24. Further, Plaintiff asserts that Defendant Guido's participation in the prosecution was "accomplished under the ongoing supervision of and with the ongoing participation, knowledge, approval, and acquiescence of Defendant Township." *Id.* at ¶ 26.

## III.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts

3

"merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

A district court may consider allegations in the complaint; matters of public record, orders, and exhibits attached to the complaint are taken into consideration. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990)). Thus, generally, a district court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## IV.    DISCUSSION

### A. *Monell* Claim Against Defendant Township

The *Monell* Doctrine applies when a plaintiff brings a 42 U.S.C. § 1983, ("§ 1983"), claim against a municipality. For a municipality to be held liable under § 1983, there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). It is not enough to identify conduct properly attributable to the municipality: a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *Belin v. O'Neill*, No. 17-13207, 2019 WL 6493942 at *3 (D.N.J. Dec. 3, 2019) (citing *Vulcan Pioneers of New Jersey*

4

*v. City of Newark*, No. 02-5802, 2008 WL 4224941 at *4 (D.N.J. Sept. 10, 2008), *aff'd*, 374 F.

App'x 313 (3d Cir. 2010)).

Importantly, the doctrine of *respondeat superior* cannot be applied to municipalities in the

context of a §1983 claim. "For constitutional torts [under §1983][], there is no *respondeat superior*

liability. Municipal liability for the acts of employees must be premised on [the *Monell* Doctrine]."

*Abdallah v. City of Paterson*, No. 16-4660, 2017 U.S. Dist. LEXIS 82135 at *8-9 (D.N.J. May 26,

2017). Pursuant to the *Monell* Doctrine, "a local government unit is liable only to the extent that

its own policies or practices led to a deprivation of constitutional rights," and thus a plaintiff would

need to demonstrate that (1) a constitutional injury occurred and (2) the injury was caused by either

a municipal policy or custom. *Id.*

Plaintiff attempts to raise both a *respondeat superior* theory of liability and, as clarified in

Plaintiff's opposition brief, a "policy/custom path to *Monell* liability." *See* Opp. at 8. As noted

above, *respondeat superior* liability cannot be applied to municipalities pursuant to a § 1983 claim.

Plaintiff's attempt to assert a *Monell* claim also fails because Plaintiff does not point to any policy

or custom in his Amended Complaint whatsoever. While Plaintiff does not need to be able to

prove his claims at this stage, he is still required to present at least some factual content that allows

the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.

To further elucidate the point: "[a] policy or custom can be established in three ways: (1)

the entity or supervisor promulgates an applicable policy statement and the act the plaintiff

complains of is the implementation of that policy; (2) the policymaker, without a formally

announced policy, violates federal law itself; or (3) the policymaker has failed to act affirmatively

at all, [though] the need to take some action to control the agents of the government is so obvious,

and the inadequacy of existing practice so likely to result in the violation of constitutional rights,

5

that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Celestin v. W. Deptford Twp.*, No. 15-7608, 2016 U.S. Dist. LEXIS 134044 at *12 (D.N.J. Sept. 29, 2016) (internal citations and quotations omitted). Here, Plaintiff was the chief of police until the month of his first trial—not only would his position make him more knowledgeable about existing policies or customs, but he was, in fact, someone who had policymaking authority— making this deficiency in his Complaint all the more glaring. Additionally, Plaintiff does not identify any policymaker in his Complaint to establish that any particular person violated the law. Regarding the failure of a policymaker failing to act affirmatively, Plaintiff argues that "knowledge and acquiescence" in the face of a custom or practice can create liability for a municipality. *See* Oral Argument Tr. 17:1-9.[1] However, as Defendant Township noted in oral argument, to establish *Monell* liability solely through a policymaker having knowledge and acquiescing to the conduct requires that there be a pattern or practice that is obvious enough to the policymaker that the Court can find such inaction sufficient to establish deliberate indifference. *Id.* at 29:15-25.[2] Here, Plaintiff has provided no factual averments whatsoever demonstrating that there is a pattern or practice of malicious prosecution, or that Defendant Township has been deliberately indifferent to repeated infringements of Fourth Amendment rights, akin to the acts allegedly committed against Plaintiff pursuant to his Complaint.

---

[1] Plaintiff also points to *Fletcher v. O'Donnell*, 867 F.2d 791 (3d Cir. 1989) to support the proposition that "custom may be established by proof of knowledge and acquiescence." *Id.* at 793. That quote, however, appears in the context of a discussion that elaborates examples where only one incident can establish a "custom." For example, "[a] single incident violating a constitutional right done by a governmental agency's highest policymaker for the activity in question may suffice to establish an official policy." *Id.* However, a single incident by a lower-level employee, like Defendant Guido, would not be sufficient. *Id.*

[2] Further, to demonstrate deliberate indifference, a plaintiff would need to show that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). Plaintiff's Complaint does not have any factual averments to support any of the prongs of deliberate indifference.

Simply asserting that Defendant Township "influenced, encouraged, and/or participated" in the "decision to institute and continue" the prosecution of Plaintiff is not sufficient. There must be more than threadbare "defendant unlawfully harmed me" accusations in a complaint to satisfy the pleading standards required by Rule 12(b)(6). Thus, Plaintiff fails to state a claim pursuant to the *Monell* Doctrine against Defendant Township.

### B. Defendant Guido's Immunity

Grand jury witnesses—including law enforcement witnesses—are entitled to absolute immunity from any claim based on their testimony. *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). The solicitation of even false testimony from witnesses in grand jury proceedings, as well as the use of false testimony in connection with further prosecution, is "absolutely protected." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992). Plaintiff does not contest that in the context of giving testimony in a judicial proceeding a witness is entitled to immunity. Opp. at 5. However, in Plaintiff's opposition briefing, he asserts that Defendant Guido was involved in the investigation of the federal case against Plaintiff and cites to case law that provides for "investigator liability" in certain circumstances. *See* Opp. at 10.

The Court finds that Plaintiff is stretching the meaning of "influenced or participated in the decision to institute criminal proceedings." *Id.* The caselaw that Plaintiff points to in support of his creative analysis of investigator liability involve the investigators that control the development of the case prior to its presentation to the prosecuting authorities, or investigators that are being directed by the prosecuting authority. *See Halsey v. Pfeiffer*, 750 F.3d 273, 278-79 (3d Cir. 2014) (noting that defendants Frank Pfeiffer and Raymond Lynch were the two investigating police officers who fabricated the plaintiff's confession, where the confession itself was acknowledged by the prosecutor as "instrumental" to the initiation of the criminal case, and where there was no

7

other direct evidence linking the plaintiff to the crimes); *Henderson v. Union Cty.*, No. 14-7708, 2017 WL 4861622 at \*1 (D.N.J. Oct. 26, 2017) (noting that the defendants in that matter were detectives and officers investigating the domestic violence incident and were involved in the subsequent criminal prosecution); *Aleynikov v. McSwain*, No. 15-1170, 2016 WL 3398581 at \*11 (D.N.J. Jun. 15, 2016) (noting that liability could exist where investigators conceal and misrepresent material facts, and noting that a plaintiff must demonstrate that the misconduct significantly contributed to the decision to prosecute).

Here, there are no specific facts to provide even an inference that Defendant Guido was involved in the development of the federal criminal case in any way other than as a witness. As noted by the Court in oral argument, the allegations Plaintiff made in reference to Defendant Guido's actions are also fundamentally conclusory. *See.* Oral Argument Tr. 25:3-21. Moreover, the information provided in the documents attached to Plaintiff's Amended Complaint undermines Plaintiff's assertion that Defendant Guido's misconduct was significant in the prosecutor's decision to initiate a prosecution: there were two other local officers providing testimony, as well as recordings of Plaintiff that prosecutors cited to in Plaintiff's indictment. *See* ECF No. 7 at Ex. H, Indictment, ¶¶ 2, 3, 8, 9. Thus, even if this Court decided that immunity did not apply to Defendant Guido, Plaintiff fails to state a malicious prosecution claim against him, discussed *infra*.

### C. Malicious Prosecution Claim Against Defendant Township and Defendant Guido

To state a claim for malicious prosecution, a plaintiff must show that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Gebhart v.*

8

*Steffen*, 574 Fed. App'x 156, 158-59 (3d Cir. 2014) (internal citation omitted). The Court will address each factor for both Defendants in turn.

The first factor for a malicious prosecution claim focuses on whether a defendant initiated a criminal proceeding. Here, Plaintiff's Amended Complaint fails to provide any facts to support an inference that either Defendant Township or Defendant Guido initiated the criminal proceeding. In fact, the attachments to the Amended Complaint indicate that the U.S. Attorney's Office brought charges against Plaintiff. ECF No. 7 at Ex. H, Certificate of the Acting Assistant Attorney General, Civil Rights Division. Thus, Plaintiff fails to establish the first factor of a malicious prosecution claim for both Defendants.

Second, the Court must determine whether the criminal proceeding ended in the plaintiff's favor. The Supreme Court in *Thompson v. Clark*, 596 U.S. 36, 48-49 (2022), rejected the argument that a plaintiff must establish an affirmative indication of innocence to demonstrate this factor of a malicious prosecution claim, rather, "a plaintiff need only show that his prosecution ended without a conviction." Here, Plaintiff's first trial ended with a conviction on one count and a mistrial on two others, which were subsequently re-tried, resulting in another mistrial and ultimately a dismissal from the prosecuting authority. Given that the claim of malicious prosecution focuses on the two counts that were ultimately dismissed without a conviction, the Court finds that Plaintiff successfully pleads the second factor for a malicious prosecution claim.

Third, the Court must determine whether there was probable cause to initiate the proceeding. Notably, a grand jury indictment can constitute prima facie evidence of probable cause unless the plaintiff can sufficiently allege that the indictment was procured by fraud, perjury or other corrupt means. *Phillips v. N.J. Transit*, No. 19-13427, 2021 WL 1661087 at *6 (D.N.J. Apr. 28, 2021). However, simply stating that fraud or perjury occurred is not enough. To

9

overcome the presumption of probable cause at the motion to dismiss stage, a plaintiff must allege specific instances of fraud, perjury, or corrupt means to procure the grand jury indictment. *Id.*

Here, Plaintiff's Complaint is utterly devoid of any particularity as to specific incidents of perjury. However, even if Plaintiff were to overcome the presumption by pointing to specific actions or statements by Defendant Guido demonstrating fraud or perjury, Plaintiff's attachments to his Complaint demonstrate that Defendant Guido's testimony was not the sole evidence that supported the filing of charges: Defendant Guido was just one of three local law enforcement witnesses that provided testimony, among other pieces of evidence independent of Defendant Guido's participation, such as recordings of Plaintiff using racial epithets, both generally and toward the alleged victims of excessive force in the matter, as well as a recording where Plaintiff allegedly attempted to defend the excessive use of force in the incident that precipitated the Indictment. ECF No. 7 at Ex. H, Indictment, ¶¶ 2, 3, 8, 9. Plaintiff argues that without Defendant Guido's eyewitness testimony regarding Plaintiff's altercation with the arrestee, there would not be a sufficient basis to bring an excessive force charge. *See* Oral Argument Tr. at 13:9-18. But, as Defendant Township's counsel addressed in oral argument, the Court makes a probable cause determination based on the totality of the circumstances, "meaning that a court should not isolate pieces of evidence when it determines whether there was probable cause for a prosecution. Rather a court should measure the cumulative weight of all the evidence and account for reasonable inferences that can be drawn from it." *Halsey v. Pfeiffer*, 750 F.3d 273, 302-03 (3d Cir. 2014); Oral Argument Tr. at 29:4-13.

This record reflects that there was sufficient probable cause to initiate proceedings beyond Defendant Guido's testimony. As for Defendant Township, there are no allegations at all that Defendant Township was involved at all, other than "in support" of Defendant Guido. Because

10

*respondeat superior* liability cannot be applied to a municipality, this theory of liability cannot be used to implicate Defendant Township. Therefore, Plaintiff fails to establish the third factor as part of a malicious prosecution claim.

Fourth, Plaintiff needs to demonstrate that Defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. If there was no probable cause to support the initiation of a criminal proceeding, malice can be inferred. *Geissler v. City of Atl. City*, 198 F. Supp. 3d 389, 399 (D.N.J. 2016) (quoting *LoBiondo v. Schwartz*, 199 N.J. 62 (N.J. 2009). However, no such assumption is warranted here: Plaintiff's attachments to his Complaint illustrate that there was sufficient evidence apart from Defendant Guido's testimony to support probable cause, as discussed above. *See* ECF No. 7 at Ex. H, Indictment, ¶¶ 2, 3, 8, 9.

But that is not the only avenue to demonstrate malice. As the Court noted during its hearing, taking Plaintiff's allegations at face value, there could be an inference made to find "malice" on the part of Defendant Guido, however, the proposed facts to support the assertion of malice were impermissibly conclusory. *See* Oral Argument Tr. at 14:21-25, 23:23-25, 24:1-25; *see also* Compl. at ¶¶ 19-24. Specifically, the Complaint does not elaborate exactly what statements that Defendant Guido made that were "false," despite a plethora of recorded trial testimony. As an example, the Complaint describes Defendant Guido "admitting to the crimes of Official Misconduct and Tampering with Public Records," but counsel could not explain to the Court what that allegation actually meant: there are no facts to suggest that Defendant Guido was ever disciplined in relation to his testimony, charged with perjury, or convicted of any crimes. *See* Oral Argument Tr. at 21:19-25, 22:1-17, 30:12-21. There are no facts to suggest that the jury specifically found Defendant Guido untruthful or did not find his testimony credible. Nor does Plaintiff allege any context to demonstrate how giving false testimony benefited Defendant Guido.

11

*See* Oral Argument Tr. at 25:3-21. Conclusions are not facts. And again, there are no allegations that Defendant Township was directly involved in Defendant Guido's testimony. Therefore, Plaintiff fails to establish the fourth factor as part of a malicious prosecution claim.

Fifth, the Plaintiff must demonstrate that he suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Here, Plaintiff's counsel was able to elaborate for the record that Plaintiff was arrested and detained, (a clear seizure pursuant to the Fourth Amendment), prior to the charge of false statements being brought against Plaintiff. *See* Oral Argument Tr. at 25:24-25, 26:1-6. Thus, the Court is satisfied that Plaintiff, through oral argument, averred sufficient facts to demonstrate that a deprivation of liberty occurred in relation to the specific charges on which Plaintiff did not receive a conviction. Therefore, Plaintiff established the fifth factor of a malicious prosecution claim.

Because Plaintiff fails to satisfy the first, third, and fourth factors, Plaintiff's malicious prosecution claims against both Defendants fail. Thus, the Court finds that Plaintiff's Amended Complaint does not provide sufficient factual averments to survive review pursuant to Rule 12(b)(6), and there does not appear to be any set of facts that could be construed, given the ample record before the Court through the materials Plaintiff attached to the Complaint itself involving his underlying trials. Therefore, the Court must grant both Defendant Township's and Defendant Guido's motions to dismiss in their entirety with prejudice.

## V.    CONCLUSION

For the reasons set forth above, Defendant Township's Motion to Dismiss, (ECF No. 10), and Defendant Guido's Motion to Dismiss, (ECF No. 12), are **GRANTED WITH PREJUDICE**.

KAREN M. WILLIAMS, U.S.D.J.

12